# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRISTOPHER N. QUEEN, et al.,

        **Plaintiffs,**

                                         **CIVIL ACTION**
    **vs.**                                  **No. 04-2607-JWL**

FRANK FEDEN, et al.,

        **Defendants.**

## MEMORANDUM AND ORDER

*Pro se* plaintiffs Christopher N. Queen, Nancy E. Queen, M. Lee Queen, Juanita Queen, and Douglas S. Queen bring this action under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), and pursuant to 42 U.S.C. §§ 1983 and 1985, for violations of their rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Plaintiffs' complaint names fourteen defendants: Frank Feden, detective of the Overland Park Police Department; W. Lewis and M. Burnett, police officers of the Overland Park Police Department; the City of Overland Park, Kansas; Target Stores, Inc. ("Target"); Choo Lee and unknown employees of Target's loss prevention staff; Rick W. Young, Special Agent for the Federal Bureau of Investigation ("FBI"); Charles E. Ambrose, Jr., Assistant United States Attorney; Eric Melgren, United States Attorney; Paul Morrison, Johnson County District Attorney; Patrick Carney, Johnson County Assistant District Attorney; Lisa G. Nouri, attorney; the Honorable James P. O'Hara, magistrate judge for the United States District Court for the District of Kansas; and the Honorable Carlos Murguia, district judge for the United States District Court for the District of Kansas.

This action is before the court on the following motions: defendants Lewis, Burnett, and the City of Overland Park, Kansas's motion to dismiss (Doc. 2); plaintiffs' motion to incorporate statements from their original complaint (Doc. 11); defendants Lewis, Burnett, and the City of Overland Park, Kansas's motion to strike (Doc. 13); plaintiffs' motion for default judgment (Doc. 16); defendant Nouri's motion to dismiss (Doc. 20); defendant Feden's motion to dismiss (Doc. 21); defendants O'Hara, Melgren, and Murguia's motion to dismiss (Doc. 31); plaintiffs' motion for leave to file an amended complaint (Doc. 35); defendants Young and Ambrose's motion to dismiss (Doc. 37); plaintiffs' motion to reconsider the order of Magistrate Judge Waxse (Doc. 39); defendants Morrison and Carney's motions to dismiss (Docs. 51, 58); defendants Young and Ambrose's motion to strike (Doc. 55); plaintiffs' motion for order (Doc. 56); defendants Target and Lee's motions to dismiss (Docs. 57, 66); plaintiffs' motion for leave to amend complaint (Doc. 62); and plaintiffs' motion for default judgment (Doc. 65).

## I.  Factual Background[1]

On December 26, 2001, Christopher and Nancy Queen, husband and wife, were accused of shoplifting cold medicine at the Target Store located at 12200 Blue Valley Parkway, in Overland Park, Kansas.  While Christopher was detained inside, three members of Target's loss prevention staff, including employee Choo Lee, "gang tackled" Nancy in the parking lot in front of the store.  One of the loss prevention staff called law enforcement and accused Christopher and Nancy, by innuendo, of being methamphetamine producers.

A half hour after the incident, Officer Lewis of the Overland Park Police Department arrived.  Officer

---

[1]     The following facts are taken from plaintiffs' complaint and the legal documents plaintiffs refer to in their complaint.  Consistent with the well-established standards for evaluating motions to dismiss, the court assumes the truth of these facts.

Lewis attempted to coerce Christopher into signing a Miranda waiver, but he refused and asked for an attorney. Nancy also requested counsel and chose to remain silent. At some point, Officer Lewis asked to search Christopher and Nancy's automobile. Christopher responded in the negative, stating that the car was the property of his parents, M. Lee and Juanita Queen, the car had nothing to do with the shoplifting incident because it was outside the immediate area of arrest, and that Officer Lewis needed to get a search warrant. Eventually, Frank Feden, a detective of the Overland Park Police Department and an associate agent of the federal Drug Enforcement Agency ("DEA"), arrived on the scene displaying a federal badge. Detective Feden wanted to search the car, but Christopher repeated his objections. Detective Feden then coerced a statement from Christopher through promises and threats to Nancy. He also coerced a statement from Nancy, implicating her in an alleged methamphetamine conspiracy with two other individuals. Despite the objections of Christopher and Nancy, the automobile was searched.

On April 23, 2002, a criminal complaint was filed in the United States District Court for the Western District of Missouri, Case No. 02-0060H-01/04. The criminal complaint charged Christopher and Nancy Queen, among others, with conspiracy to distribute pseudoephedrine, then having reasonable cause to believe that such chemical would be used to manufacture methamphetamine in violation of 21 U.S.C. §§ 841(c)(2) and 846. Rick W. Young, special agent with the FBI, was the affiant on the complaint.

On May 21, 2002, the grand jury in the Western District of Missouri returned an indictment against Christopher and Nancy Queen and others, Case No. 02-00131-01/05/CR-W-4. Count one of the indictment charged Christopher and Nancy Queen with conspiracy to possess and distribute pseudoephedrine, then having reasonable cause to believe that it would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2). As part of the conspiracy, the indictment alleged that Christopher and Nancy would steal boxes

containing pseudoephedrine products from retail stores, and then sell these stolen products to other members of the conspiracy.  Specifically, the indictment alleged that on or about December 26, 2001, Christopher and Nancy Queen attempted to steal boxes of products containing pseudoephedrine from the aforementioned Target Store in Overland Park, Kansas.

<u>A. Criminal Proceedings Against Christopher Queen</u>

Magistrate Judge Sarah W. Hays of the United States District Court for the Western District of Missouri conducted hearings on February 26, 2003, and March 18, 2003 regarding the United States' Motion to Dismiss Indictment Without Prejudice and *pro se* Christopher Queen's Motion to Dismiss Indictment With Prejudice.[2]  The issue before Magistrate Judge Hays was whether the indictment against Christopher Queen should be dismissed with or without prejudice for a conceded violation of the Interstate Agreement on Detainers ("IAD"), 18 U.S.C. App. § 2.  On April 24, Magistrate Judge Hays issued a report and recommendation to dismiss the charges in the indictment against Christopher Queen with prejudice.

The following is a summary of Magistrate Judge Hays's proposed findings of fact:

1.　　On March 26, 2002, Christopher Queen was incarcerated at the Johnson County Jail to serve a 180 day sentence for two prior criminal charges filed in the courts of Johnson County, Kansas.  On April 15, 2002, Assistant Johnson County District Attorney Patrick Carney made a package plea offer to Christopher Queen regarding four separate Johnson County cases pending against him.

2.　　 On April 23, 2002, a criminal complaint was filed against Christopher Queen in the Western District of Missouri, charging him with conspiracy to distribute pseudoephedrine having reason to believe that it would be used to manufacture methamphetamine.  That same day, the United States Marshals Service for the District of Kansas issued a Detainer Against Unsentenced Prisoner to the Johnson County Jail

---

[2]　　At the hearings, Assistant United States Attorney Charles Ambrose, Jr.  represented the government. Patrick Carney, Johnson County Assistant District Attorney and three attorneys who represented Christopher Queen on state charges filed in Johnson County, Kansas testfied.

for Christopher Queen.  The Detainer instructed Johnson County officials that the Interstate Agreement on Detainers did not apply because Mr. Queen was not a sentenced prisoner, but directed Johnson County Officials to notify the Marshals Service immediately if his status changed.  The copy of the detainer on file with the Marshals Service in the Western District of Missouri did
not indicate that the detainer was served on any official in Johnson County.

3.　　On April 24, 2002, the Government filed a Motion to Request Writ of Habeas Corpus ad Prosequendum for Christopher Queen and such an order was issued that day.

4.　　On May 8, 2002, the United States Marshals Service in the Western District of Missouri picked up Christopher Queen from the Johnson County Jail pursuant to the Writ of Habeas Corpus ad Prosequendum.  The Johnson County Jail advised the Marshals Service that Christopher Queen was in custody on pending charges.  The Marshals Service was not advised that Mr. Queen was a sentenced prisoner. Christopher Queen was returned to the Johnson County Jail on June 10, 2002 for a court appearance in Johnson County Court.

5.　　Assistant District Attorney Patrick Carney made an offer on July 25, 2002 to resolve the four pending Johnson County cases against Christopher Queen.  In contrast to Mr. Carney's April 15 offer, this deal included a cooperation clause, requiring Mr. Queen to assist with the United States Attorney's office ongoing drug investigation.

6.　　On September 16, 2002, Christopher Queen sent Assistant United States Attorney Charles Ambrose a letter stating that he was terminating his agreement to cooperate in the federal case.  Mr. Ambrose subsequently notified Mr. Carney of Mr. Queen's withdrawal of assistance.

7.　　On September 24, 2002, the Johnson County Jail informed the Marshals Service that Christopher Queen had been sentenced in Johnson County.  On that same date, the Marshals Service in the Western District of Missouri obtained full custody of Mr. Queen under the detainer.  Prior to this time, the Johnson County authorities had not provided any indication that Mr. Queen was a sentenced prisoner.

Under these facts, the government acknowledged that the Interstate Agreement on Detainers was violated because Christopher Queen was a sentenced prisoner when the federal detainer was lodged and that his federal charges were not resolved prior to him being returned to the Johnson County Jail, the original place of imprisonment.  Magisrate Judge Hays recommended that the indictment against Mr. Queen be dismissed with prejudice.  In particular, Magistrate Judge Hays concluded that the violation was a result "of mistakes outside the United States Attorney's Office."  She found that the Marshals Service for the Western District of

Missouri and Assistant United States Attorney Charles Ambrose were led to believe that Mr. Queen was an unsentenced prisoner at the Johnson County Jail, the United States Marshals Service for the District of Kansas was responsible for issuing the detainer, and the copy of the detainer provided to the United States Marshals Service for the Western District of Missouri did not indicate that the detainer had been served. Thus, Magistrate Judge Hays found that federal authorities, believing that Mr. Queen was an unsentenced prisoner and no detainer had been lodged, understandably complied with Johnson County's request to return Mr. Queen for a court appearance on June 10. She stated: "This is not an instance of prosecutorial bad faith and there is no evidence of a pattern of neglect or intentional violation of the Interstate Agreement on Detainers." Notwithstanding this determination, Magistrate Judge Hays stated that government entities, rather than Mr. Queen, were responsible for the violation, and that justice favored dismissal of the federal charges with prejudice.

Five days after Magistrate Judge Hays's report and recommendation, a criminal complaint was filed against Christopher Queen in the District of Kansas, Case No. 03M-8039-01. FBI Special Agent Rick Young was the affiant on the complaint. The criminal complaint charged that between January 1, 1999 and April 23, 2002, in Johnson and Wyandotte Counties, in the District of Kansas, Christopher Queen did knowingly and intentionally possess, with intent to distribute, pseudoephedrine, then having reasonable cause to believe that such chemicals would be used to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2) and 18 U.S.C. § 2.

On May 5, 2003, the Honorable Gary A. Fenner, district judge for the United States District Court for the Western District of Missouri, adopted Magistrate Judge Hays's report and recommendation to dismiss the indictment against Christopher Queen with prejudice.

On May 29, 2003, the grand jury in the District of Kansas returned a one count indictment, Case No. 03-20070-01-CM, against Christopher Queen, charging him with knowingly and intentionally distributing pseudoephedrine between December 26, 2001 and April 23, 2002, having reasonable cause to believe that it would be used to manufacture methamphetamine. Charles Ambrose was the prosecuting attorney assigned to the case due to his designation as a Special Assistant United States Attorney for the District of Kansas. On June 13, 2003, the United States, through Charles Ambrose, filed a motion to dismiss the indictment against Christopher Queen. That same date, the Honorable Carlos Murguia, district judge for United States District Court for the District of Kansas, granted the motion to dismiss the indictment.

### B. Criminal Proceedings Against Nancy Queen

On May 9, 2002, Magistrate Judge Hays appointed Lisa Nouri to represent Nancy Queen in case number 02-00131-04-CR-W-GAF. Nancy Queen alleges that on January 13, 2003, she first notified Lisa Nouri of the IAD violation that applied in her case. Mrs. Queen, however, states that Ms. Nouri would not advocate her IAD claim. Mrs. Queen subsequently entered into a plea agreement and on January 22, she pleaded guilty before Judge Fenner to the charges contained in the indictment. Mrs. Queen testified at the trial of two co-defendants during the week of May 12, 2003 and those co-defendants were convicted by a jury. The government subsequently filed a downward departure motion. Judge Fenner granted the motion and on June 25, 2003, and he sentenced Mrs. Queen to time served and placed her on a three-year term of supervised release. Mrs. Queen, however, violated the conditions of her release and was sentenced on November 10, 2004 to eleven months of incarceration. Ms. Nouri did not represent Nancy Queen during the revocation process.

Nancy Queen filed a petition pursuant to 28 U.S.C. § 2255, arguing that her conviction and sentence

7

should have been set aside because of the alleged violations of IAD and Ms. Nouri's alleged ineffective assistance of counsel in failing to discover such violations.  Judge Fenner denied Mrs. Queen's motion for relief on December 2, 2004.

Plaintiffs filed this action on December 28, 2004.

## II.  Standard of Review

All defendants, except for defendants Target and Lee, assert that they are entitled to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).[3]

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or] her claims which would entitle him [or her] to relief," Aspenwood Inv. Co. v. Martinez, 355 F.3d 1256, 1259 (10th Cir. 2004) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, Neitzke v. Williams, 490 U.S. 319, 326 (1989).  The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff.  Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1088 (10th Cir. 2003).  The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Here, the court has considered several documents submitted by defendants that plaintiffs have referenced in their complaint.  The court, however, does not convert the applicable motions into ones for

---

[3]    Defendants Target and Lee bring their motions for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5), and the court recites the applicable standard of review in the section of this memorandum and order addressing their motions.

8

summary judgment. See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) (stating that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

### III. Discussion

Plaintiffs repeatedly acknowledge in their complaint that this court only has jurisdiction for conduct that occurred in the District of Kansas and that jurisdiction does not exist for any unlawful acts that occurred in the Western District of Missouri.  They state that allegations related to the Western District of Missouri are only provided as a necessary background.  The court therefore addresses only the merits of plaintiffs' allegations that are directly related to the District of Kansas.

A.  Motion to Dismiss filed by Defendants Lewis, Burnett, and the City of Overland Park

Plaintiffs Christopher Queen, Nancy Queen, M. Lee Queen, and Juanita Queen allege § 1983 claims against defendants Lewis and Burnett arising out of the shoplifting incident that occurred on December 26, 2001.  Without going into unnecessary detail, these plaintiffs assert violations of the rights provided under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.  Additionally, they assert municipal liability against defendant City of Overland Park for the unlawful conduct of its officers, as well as an apparent failure to train claim.

Defendants Lewis, Burnett, and the City of Overland Park maintain that they are entitled to the dismissal of plaintiffs' claims on three grounds, but the court mentions only one: plaintiffs' claims are barred by the applicable statute of limitations.

In § 1983 actions, federal courts apply the state statute of limitations for personal injury claims, which,

9

in Kansas, is two years. <u>Laurino v. Tate</u>, 220 F.3d 1213, 1218 (10th Cir. 2000) (holding that the district court properly applied a two-year statute of limitations to plaintiff's § 1983 claims); <u>Johnson v. Johnson County Comm'n Bd.</u>, 925 F.2d 1299, 1301 (10th Cir. 1991) (holding that the two-year statute of limitations for personal injury actions found in K.S.A. § 60-513(a)(4) applies to § 1983 claims).

While state law governs statute of limitations issues, federal law determines the accrual of § 1983 claims. <u>Baker v. Bd. of Regents</u>, 991 F.2d 628, 632 (10th Cir. 1993). A civil rights claim does not accrue until "facts that would support a cause of action are or should be apparent." <u>Fratus v. Deland</u>, 49 F.3d 673, 675 (10th Cir. 1995) (quotation omitted). Thus, the cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." <u>Baker</u>, 991 F.2d at 632; <u>see also</u> <u>Smith v. Enid ex rel. Enid City Comm'n</u>, 149 F.3d 1151, 1154 (10th Cir. 1998) (holding that § 1983 claims accrue "when the plaintiff knows or should have known that his or her constitutional rights have been violated").

Plaintiffs did not file their complaint until December 28, 2004, over three years after the shoplifting incident at Target. Christopher Queen, however, argues that the unlawful collection of evidence on December 26, 2001 led to charges in two other federal cases. He asserts that he first realized that his civil rights were violated on May 5, 2003, when Judge Fenner dismissed the federal charges against him in the Western District of Missouri, and then again on June 13, 2003 when Judge Murguia dismissed the federal charges against him in the District of Kansas. Mr. Queen's argument is without merit.

The court concludes that plaintiffs' constitutional claims accrued on December 26, 2001, the date of the alleged unlawful acts, and are therefore time-barred. <u>See</u> <u>Johnson</u>, 925 F.2d at 1301 ("Claims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur.").

Next, Christopher Queen argues that the court should apply the statute of limitations for Bivens claims because of defendant Feden's separate federal investigation.   This argument fails because Bivens claims are also subject to the two-year statute of limitations under K.S.A. § 60-513(a)(4).  See Indus. Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994) (citations omitted) ("[A] Bivens action, like an action brought pursuant to 42 U.S.C. § 1983, is subject to the statute of limitations of the general personal injury statute in the state where the action arose.").[4]

Finally, Nancy Queen asserts that the statute of limitations should be tolled for her claims because she was under a legal disability during the periods of her incarceration.   The court rejects this contention.  Mrs. Queen has not alleged that she was denied access to the courts during any of her periods of imprisonment.  See K.S.A. § 60-515(a) (stating that "if a person imprisoned for any term has access to the court for purposes of bringing an action, such person shall not be deemed to be under legal disability").

Accordingly, the court grants defendants Lewis, Burnett, and the City of Overland Park's motion (Doc. 2) and dismisses them with prejudice.

### B.  Motion to Dismiss filed by defendant Nouri

Plaintiffs' complaint states that regardless of Judge Fenner's ruling on Nancy Queen's habeas petition, defendant Nouri is "guilty" of ineffective assistance of counsel and liable for legal malpractice with respect to her representation of Nancy Queen in the Western District of Missouri.  Additionally, plaintiffs' complaint asserts that defendant Nouri is liable for breach of attorney-client privilege due to statements she allegedly made to an inmate at the United States Penitentiary in Leavenworth, Kansas.

---

[4]     To the extent plaintiffs assert any claims under § 1985, the two-year statute of limitations set forth in K.S.A. § 60-513(a)(4) also applies.  Crosswhite v. Brown, 424 F.2d 495, 496 & n.2 (10th Cir. 1970).

11

Based on the pleadings, it appears that plaintiffs realize that this court is not the proper forum to relitigate the effectiveness of defendant Nouri's representation of Nancy Queen, or to make any other claims that would undermine Nancy Queen's conviction. To avoid any confusion on this point, however, the court observes that the Tenth Circuit applies the principles established in Heck v. Humphrey, 512 U.S. 477 (1994), to Bivens claims, preventing a litigant from bringing claims that undermine his or her conviction until such conviction is overturned. Crow v. Penry, 102 F.3d 1086, 1087 (10th Cir. 1996).

Nancy Queen's remaining claim is that defendant Nouri breached the attorney-client privilege when she communicated to Rhonda Dyke, a prisoner at the federal penitentiary in Leavenworth, Kansas that "she no longer respected Nancy," "she no longer wanted to represent Nancy," and "she wished Nancy would fire her as her attorney." Although plaintiffs' complaint is unclear, it appears that Nancy Queen maintains that this breach amounted to a violation of her Sixth Amendment right to counsel.

This claim lacks merit on several levels. First, defendant Nouri contends that Christopher Queen is acting as Nancy Queen's lawyer and thus cannot bring a civil rights action on her behalf. The court concurs that the pleadings filed on behalf of all the listed plaintiffs appear to be all written by Christopher Queen. In fact, Mr. Queen acknowledges that his wife signed a power of attorney document to permit him to litigate her claims. Regardless of this power of attorney form, it is axiomatic that a lay person is entitled to represent only himself, and has no authority to appear as an attorney for other people. See 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as by the rules of such courts, respectively, are permitted to manage and conduct causes therein."). Thus, Nancy Queen can present her own case or have it brought before the court by a licensed attorney; Christopher Queen may not represent his spouse or any of his other family members.

12

Alternatively, assuming it could be proven that Nancy Queen actually signed the pleadings in this case, her breach of attorney claim against defendant Nouri would still fail. While Nancy Queen claims that defendant Nouri acted as the government's other attorney, defendant Nour's appointment to represent Nancy Queen did not change her status as a private actor. See Christian v. Crawford, 907 F.2d 808, 810 (8th Cir. 1990) (stating that "attorneys are not transformed into federal officials for purposes of a Bivens action merely because they are appointed by a federal court"). Additionally, the claim is barred under the principles of Heck because the alleged communication occurred during defendant Nouri's representation of Nancy Queen, and a favorable ruling for Nancy Queen would likely undermine her conviction in the Western District of Missouri. Finally, the alleged statements do not appear to fall within the scope of attorney-client privilege, as there are no allegations that defendant Nouri divulged communications that were initially made in confidence with Nancy Queen.

For all the reasons stated above, the court grants defendant Nouri's motion (Doc. 20) and dismisses her from the case with prejudice.

### C.  Motion to Dismiss filed by defendant Feden

Plaintiffs' claims against defendant Feden, like their claims against defendants Lewis, Burnett, and the City of Overland Park, arise from alleged Fourth, Fifth, and Fourteenth Amendment violations that occurred on December 26, 2001. Specifically, plaintiffs frame their allegations as a Bivens action because of defendant Feden's status as an associate agent of the DEA. Plaintiffs Christopher and Nancy Queen maintain that the illegally obtained evidence by defendant Feden and others on December 26, 2001 was the "sole point of connection" to the conspiracy allegations filed in the Western District of Missouri, which led to more charges against Christopher Queen in the District of Kansas. Again, Christopher Queen argues that the two-year statute of limitations did not commence until June 13, 2003, the date that Judge Murguia dismissed the

indictment against him.  On the other hand, Nancy Queen argues that her claims will not accrue until she gets a reasonable legal ruling and her federal conviction is overturned on appeal.  The court disagrees.

The court concludes that the Bivens claims against defendant Feden accrued on December 26, 2001, the date of his alleged unlawful conduct, and thus they are time-barred under the applicable two-year statute of limitations.[5]  Accordingly, the court grants defendant Feden's motion (Doc. 21) and dismisses him from the case with prejudice.

### D.  Motion to Dismiss filed by defendants Melgren, O'Hara, and Murguia

Defendants Melgren, O'Hara, and Murguia request an order dismissing them from this action pursuant to Fed. R. Civ. P. 12(b)(6).  Defendants point out that while plaintiffs' complaint names them in the caption of the complaint, the body of the complaint states that they are "phantom respondents" and "are not actually being sued for any injunctive relief or any damages."

Plaintiffs filed a response indicating that they have no objection to the dismissal of defendants O'Hara, Murguia, and Melgren.  Accordingly, the court grants defendants Melgren, O'Hara, and Murguia's motion to dismiss (Doc. 31) and dismisses them from the case with prejudice.

### E.  Motion to Dismiss filed by defendants Young and Ambrose

Plaintiff Christopher Queen generally alleges that defendants Rick Young and Charles Ambrose, in an act of personal revenge, conspired to use the illegally obtained evidence from December 26, 2001 to bring a second federal charge against him in the District of Kansas.  Christopher Queen maintains that the second charge against him in the District of Kansas amounted to a selective and vindictive prosecution, violated his Fifth

---

[5]      To the extent M. Lee and Juanita Queen assert claims against defendant Feden, they are also time-barred.

Amendment rights to liberty and to a legal indictment, and violated his Fourteenth Amendment due process and equal protection rights.  He frames all his claims under Bivens.[6]

### 1. Bivens Claims

Christopher Queen claims that a charge was filed in the District of Kansas only after he successfully litigated his case in the Western District of Missouri and embarrassed defendant Ambrose.  He states that defendant Ambrose failed to appeal the adverse ruling in the Western District of Missouri and instead used the District of Kansas "to effect his pseudo appeal to gain a clearly unlawful conviction."  He argues that defendants Young and Ambrose should have known that the United States did not have further jurisdiction in the District of Kansas after they litigated the IAD violation in the Western District of Missouri.

In response to Christopher Queen's claims that his constitutional rights were violated when defendants Young and Ambrose prosecuted him in the District of Kansas, defendant Ambrose maintains that he is entitled to prosecutorial immunity and qualified immunity, and defendant Young asserts that he is protected by qualified immunity.  The court agrees.

State and federal prosecutors are entitled to absolute immunity in § 1983 and Bivens-type suits, respectively, for activities within the scope of their prosecutorial duties.  <u>Imbler v. Pachtman</u>, 424 U.S. 409, 420 (1976); <u>see</u> <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978) ("Without congressional directions to the

---

[6]     Plaintiffs' complaint asserts claims under Bivens "and the precepts and concepts of 42 U.S.C. § 1985." However, plaintiffs clarified in two responses to defendants Young and Ambrose's motion to dismiss that [t]he statement that [defendants] acted in accord under the precepts of section 1985 . . . does not indicate . . . making any direct 1985 claim" and that "[s]tating the precepts and concepts of the 1985 action is not tantamount to bringing an[] action under that code."  Assuming plaintiffs intended to assert § 1985 (2) or (3) conspiracy claims against defendants Ambrose and Young, the allegations in their complaint fail to state an actionable claim under either subsection.

contrary, we deem it untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials."). This immunity extends to prosecutorial activities that are "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430, accord Burns v. Reed, 500 U.S. 478, 491-92 (1991). This immunity does not arise purely from esteem for prosecutors, but rather arises from the concern that protecting the prosecutor's role as an advocate is necessary to protect the judicial process itself. Kalina v. Fletcher, 522 U.S. 118, 127 (1997). Thus, in evaluating whether a prosecutor is entitled to immunity for a particular activity, the court must examine "the nature of the function performed, not the identity of the actor who performed it." Id. (quotation omitted). A prosecutor is entitled to absolute immunity to the extent that he or she functions as an advocate for the government in preparing for the initiation of judicial proceedings or for trial, Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993), but this immunity does not extend to administrative or investigatory functions that are unrelated to preparing for initiating a prosecution or judicial proceedings, id.; Burns, 500 U.S. at 494-96.

It is well-established that a prosecutor is entitled to absolute immunity for preparing and filing criminal charges. Imbler, 424 U.S. at 431 (holding that a prosecutor is immune for "initiating a prosecution and presenting the State's case"); Kalina, 522 U.S. at 129 (holding that a prosecutor was entitled to absolute immunity for preparing and filing an information and a motion for an arrest warrant); Snell v. Tunnell, 920 F.2d 673, 693 (10th Cir. 1990) (stating that filing charges is an act "within the continuum of initiating and presenting a criminal case"). In doing so, however, a prosecutor is not entitled to absolute immunity to the extent that he or she acts as a complaining witness. Kalina, 522 U.S. at 129-31 (holding that a prosecutor was not entitled to absolute immunity for signing a certification for determination of probable cause under penalty of perjury which contained two inaccurate factual statements). This is so because "testifying about facts is the function

16

of the witness, not of the lawyer." <u>Id.</u> at 130.

Defendant Ambrose is entitled to absolute prosecutorial immunity for his decision to initiate charges against Christopher Queen in the District of Kansas except insofar as it is alleged that he may have functioned as a complaining witness.  The allegations in the complaint, however, do not give rise to any reasonable inference that defendant Ambrose stepped out of his prosecutorial role and into that of a complaining witness. Here, defendant Young, not defendant Ambrose, signed the criminal complaint and swore to the truth of the facts in his attached affidavit.  Defendant Ambrose initiated the criminal proceeding and acted solely as an advocate of the government.  Accordingly, he is protected by absolute immunity because his actions were confined to the traditional prosecutorial role.

Alternatively, the court also concludes that defendant Ambrose is entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from individual liability under Bivens unless their conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  The purpose of qualified immunity is to avoid excessive disruption of governmental functions and to dispose of frivolous claims in the early stages of litigation. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

In evaluating a claim for qualified immunity, the court must first determine whether the facts alleged, considered in the light most favorable to the plaintiff, state the violation of a constitutional right. <u>People for the Ethical Treatment of Animals v. Rasmussen</u>, 298 F.3d 1198, 1207 (10th Cir. 2002).  If so, the court must go on to determine whether the constitutional right was clearly established at the time of injury. <u>Id.</u>  If the answer to either of these questions is no, the defendant is entitled to qualified immunity. <u>Id.</u>

In the complaint, Christopher Queen asserts that defendant Ambrose violated his Fifth and Fourteenth Amendment rights by bringing a charge in the District of Kansas when it was imminent that the federal charges in the Western District of Missouri would be dismissed with prejudice.  The court determines that the Fifth Amendment due process clause controls because the allegations relate to conduct under the color of federal law.  The Fifth Amendment establishes that "no person . . . shall be deprived of life, liberty, or property without due process of law."  U.S. Const. amend. V.  The subsequent federal prosecution in the District of Kansas deprived Christopher Queen of his liberty during the time he spent in custody for that charge, but despite this assumed prejudice, the court cannot conclude that he was not afforded the appropriate level of due process in those proceedings.  At best, Christopher Queen asserts that after Magistrate Judge Hays recommended to Judge Fenner that he dismiss the conspiracy charge with prejudice based on the IAD violation, defendant Ambrose should have known that he could not subsequently file the substantive crime related to that conspiracy.  Assuming, without deciding, that it was a violation of IAD to bring the separate prosecution in the District of Kansas, the court determines that it did not rise to the level of a constitutional violation.  <u>See Greathouse v. United States</u>, 655 F.2d 1032, 1034 (10th Cir. 1981) (holding that the "rights created by the [IAD] are statutory, not fundamental, constitutional, or jurisdictional in nature" and  "[a]bsent special circumstances, violations of the IAD are not grounds for collateral attack on a federal conviction and sentence under § 2255"); <u>see also</u> <u>Butz</u>, 438 U.S. at 507 ("Federal officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law.").

Although the  functional approach prevents defendant Young from obtaining absolute immunity for his actions as a complaining witness, the court concludes that he is entitled to qualified immunity for signing and swearing to the criminal complaint against Christopher Queen in the District of Kansas.  Christopher Queen

18

maintains that defendant Young swore to the criminal complaint using only the illegally obtained evidence from December 26, 2001. The court refuses to allow Christopher Queen to bootstrap his untimely claims that the evidence obtained by police officers on December 26, 2001 violated his constitutional rights. Christopher Queen's cases in the Western District of Missouri and the District of Kansas were not dismissed because of any illegally obtained evidence, but as a result of IAD violations. The court also observes that defendant Young's affidavit was based on evidence obtained from sources unrelated to the December 26, 2001 arrests, and that the grand jury in the District of Kansas indicted Christopher Queen for illegal conduct that occurred on December 26, 2001 *and* April 23, 2002 (emphasis added). Finally, the court recognizes that "it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists." Smiddy v. Varney, 665 F.2d 261, 266 (9th Cir. 1981). Mr. Queen's allegations fail to rebut this presumption. Defendant Young did not violate a constitutional right and he is protected by qualified immunity.

### 2. Selective Prosecution

A plaintiff asserting a claim of selective prosecution must establish that "'he has been singled out for prosecution while others similarly situated generally have not been proceeded against for the type of conduct forming the basis of the charge against him.'" United States v. Furman, 31 F.3d 1034, 1037 (10th Cir. 1994) (citation omitted). "In addition, the [plaintiff] must prove that the government's selection of him for prosecution "'was invidious or in bad faith and was based on impermissible considerations.'" Id.. Ordinarily, "'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" United States v. Armstrong, 517 U.S. 456, 464 (1996) (citation omitted); see

Cooper v. Sedgwick County, 206 F. Supp. 2d 1126, 1144 (D. Kan. 2002) (recognizing that "some degree of selectivity is to be expected"). Nevertheless, under the Fifth Amendment's equal protection component, "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" Armstrong, 517 U.S. at 464 (citation omitted).

Christopher Queen claims that he and Nancy were held in custody for months as "dangers to the community" while "several other individuals . . . identically situated . . . were not even apprehended[] by the government." In support, Christopher Queen alleges that defendant Young testified at the preliminary hearing in the District of Kansas that he knew the names of other individuals that had not been apprehended for "supplying the stores" with over-the-counter cold remedies. Christopher Queen's allegations regarding defendant Young's testimony are vague and do not establish that he was prosecuted in bad faith or based on any other impermissible consideration such as race or religion. Mr. Queen's arguments show only that after the other members of the conspiracy were convicted in the Western District of Missouri and Christopher Queen's case was dismissed because of an IAD violation, defendant Ambrose decided, albeit mistakenly, to file a claim in the District of Kansas against Christopher Queen for illegally possessing pseudoephedrine. While defendant Ambrose did not bring similar charges against the other members of the conspiracy in the District of Kansas, the court again concludes that these circumstances do not provide a reasonable inference that defendant Ambrose used his prosecutorial discretion in bad faith. Finally, to the extent Christopher Queen asserts a selective prosecution claim against defendant Young, he fails. The decision to initiate a criminal case is solely within the discretion of the prosecutor. Moreover, Christopher Queen does not allege that defendant Young unduly influenced or in any way coerced defendant Ambrose in making the decision to prosecute.

<u>3.  Vindictive Prosecution</u>

"A claim for vindictive prosecution ordinarily arises when, during the course of criminal proceedings, a defendant exercises constitutional or statutory rights and the government seeks to punish him therefor by instituting additional or more severe charges." <u>Poole v. County of Otero</u>, 271 F.3d 955, 960 n.5 (10th Cir. 2001) (citation omitted).  In that context, a defendant must establish "either (1) actual vindictiveness or (2) a realistic likelihood of vindictiveness which gives rise to a presumption of vindictiveness." <u>United States v. Thomas</u>, 410 F.3d 1235, 1247 (10th Cir. 2005) (citation omitted).  If the plaintiff satisfies these elements, then the burden shifts to the government "to justify its decision with "legitimate, articulable, objective reasons." <u>United States v. Contreras</u>, 108 F.3d 1255, 1263 (10th Cir. 1997) (citation omitted).  The Tenth Circuit has also characterized First Amendment retaliatory prosecution claims as "vindictive prosecution." <u>Poole</u>, 271 F.3d at 960 n.5 (citation omitted).  The retaliation, however, may not be "speculative or simply subjective." <u>Id.</u> at 960 n.6 (citing <u>Anderson v. Davila</u>, 125 F.3d 148, 160 (3d Cir. 1997)).

In a conclusory fashion, Christopher Queen states that defendants Young and Ambrose engaged in a personal act of revenge by bringing charges against him in the District of Kansas.  He believes that after he successfully "whipped" defendant Ambrose in the Western District of Missouri, thereby embarrassing him, defendant Ambrose decided to punish him and enhance his own prosecutorial position.  The circumstances alleged by Christopher Queen do not give rise to a presumption of vindictiveness by either defendants Young or Ambrose.  They are based on his own speculative, subjective beliefs as to why defendant Ambrose brought charges against him.  Moreover, the grand jury's indictment of Christopher Queen for the charges further defeats the notion that defendant Ambrose's conduct was baseless and done out of revenge.  In short, the allegations do not support a realistic likelihood of vindictiveness or a motive for retaliation.  Accordingly, the

court finds that Christopher Queen fails to state a claim for vindictive prosecution against defendant Ambrose. Again, the court finds that defendant Young is not liable for vindictive prosecution for the same reasons stated as to Christopher Queen's selective prosecution claim.

### 4. Other Claims

Christopher Queen asserts that defendants Young and Ambrose are liable for their "complicity" in the Fourth, Fifth, and Fourteenth Amendment violations that occurred on December 26, 2001. Bivens liability, however, requires direct, personal participation. See Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1214 (10th Cir. 2003) (stating that a plaintiff must allege direct, personal participation on behalf of an individual defendant in order to establish Bivens liability). Even assuming Mr. Queen could allege that defendants Young and Ambrose were present during the shoplifting incident on December 26, 2001, these claims would be barred under the applicable two-year statute of limitations.

Next, plaintiffs M. Lee Queen, Juanita Queen and Douglas Queen sue defendant Young for the anxiety caused by Christopher Queen's custody, and their expenses in assisting Christopher Queen to litigate his criminal case. The court dismisses these purported claims because they fail to state a claim for relief.

Finally, Christopher Queen asserts that defendants Ambrose and Young conspired to interfere with his marriage, a constitutionally protected relationship as husband and wife. Mr. Queen does not provide the court with any other details for this conclusory allegation, nor does he assert a specific constitutional right. The court declines to play the role of advocate for Mr. Queen, even under the liberal construction afforded *pro se* pleadings. The court dismisses these allegations as well.

Accordingly, the court grants defendants Young and Ambrose's motion to dismiss (Doc. 37) and dismisses them from the case with prejudice.

<u>F.  Motions to Dismiss filed by defendants Morrison and Carney</u>

Defendants Paul Morrison and Patrick Carney maintain that plaintiffs' complaint should be dismissed against them for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5) (Doc. 51) and, alternatively, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 58).

The long history of plaintiffs' attempts to serve defendants Morrison and Carney need not be repeated here.  Even assuming service of process is proper against these two defendants, they are entitled to dismissal from this lawsuit based on the grounds in their second motion to dismiss.

### 1. Allegations from Original Complaint

Plaintiffs' complaint does not contain any allegations directed against defendant Morrison.  Similar to defendants Melgren, O'Hara, and Murguia, defendant Morrison is listed in the caption, but is later named as a "phantom respondent" with "no damages requested."  Accordingly, the court therefore dismisses defendant Morrison with prejudice.  <u>See</u> <u>Collins v. Kibort</u>, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption").  The court thus turns to the allegations against defendant Carney.

Christopher Queen alleges that in September 2002, after being ignored by Travis Poindexter, his attorney representing him in the Western District of Missouri, he attempted to file several motions on his own behalf.  During the same period, he also states that he sent letters to Judge Fenner, defendant Ambrose, and Mr. Poindexter, informing them of his withdrawal of cooperation in the federal prosecutions as required by his Kansas plea agreement package with defendant Carney.  Mr. Queen explains that after defendant Ambrose received his letter, defendant Ambrose made a call to defendant Carney about his withdrawal of cooperation.  Mr. Queen maintains that at this point in time he had cooperated in the federal investigation to his full extent and

23

the only further cooperation required from him was a plea of guilty.  Mr. Queen adds that at a subsequent

hearing, defendant Ambrose testified that defendant Carney told him that the Kansas plea agreement package

would be withdrawn and new charges would be filed in the state cases unless Mr. Queen cooperated in the

federal investigation.  Lastly, Mr. Queen contends that defendant Carney attempted to apply pressure to him

to illicit a guilty plea.

Based on these allegations, Christopher Queen claims that defendant Carney violated his Fifth

Amendment rights by placing the cooperation clause in the Kansas plea agreement and by attempting to compel

him to be a witness against himself and enter a guilty plea.  Mr. Queen also seeks injunctive relief "for others

identically situated" to prevent a prosecutor from adding a cooperation clause to a plea agreement after an

"illegal shuttle."

Mr. Queen's claims for damages against defendant Carney fail because they are time-barred by the

two-year statute of limitations applicable to § 1983 claims and because defendant Carney is protected by

absolute immunity for his alleged conduct.  As mentioned earlier, plaintiffs did not file their action until

December 28, 2004, thus any claims for conduct occurring before December 28, 2002 are untimely.  Here,

Mr. Queen's claims against defendant Carey concern conduct that transpired between May and October 2002.

Secondly, all of defendant Carney's alleged conduct concerned the plea negotiation process, an activity

"intimately associated with the juridical process."  See Pennington v. Penner, 207 F. Supp. 2d 1225, 1236 (D.

Kan. 2002) (citations omitted) ("A prosecutor's absolute immunity extends to conduct surrounding plea

negotiations.").  The fact that Mr. Carney may have pressured Mr. Queen to enter a guilty plea or made threats

to withdraw the plea agreement and file new charges against Mr. Queen if he failed to cooperate with the

federal investigation does not change the outcome.  See id. at 1237 (citation omitted) ("Immunity attaches to

the activity or function and is not dependent on the manner in which it is performed or the motive behind it."). Lastly, Mr. Queen lacks standing to bring an action for injunctive relief on behalf of "others identically situated," let alone himself.  Standing for injunctive relief requires a showing of a real or immediate threat of future harm and may not be predicated on past wrongs.  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-02 (1983).

Accordingly, defendants Morrison and Carney's second motion to dismiss (Doc. 58) is granted.  The court denies defendants Morrison and Carney's first motion to dismiss (Doc. 51) as moot.

### 2.  Allegations from Proposed Amended Complaint

On April 21, 2005, Christopher Queen filed a motion for leave  to amend his complaint against defendants Carney and Ambrose, seeking to add claims under  42 U.S.C. §§ 1983, 1985, and Bivens (Doc. 35).  Mr. Queen's allegations in his amended complaint do not substantially differ from his allegations in his original complaint regarding his withdrawal of cooperation.  In summary, Mr. Queen claims that defendant Carney, without prosecutorial interest, added the cooperation clause to his Kansas plea agreement package. Mr. Queen also asserts that on October 10, 2002, defendant Ambrose came forward with defendant Carney's threats to withdraw the Kansas plea agreements and to refile the original state charges if he continued to assert his constitutional rights and failed to cooperate as required by the plea agreement.  Finally, Mr. Queen cites to defendant Carney's testimony at the March 2003 hearing before Magistrate Judge Hays.  Mr. Queen states that in open court, defendant Carney admitted to threatening to withdraw the Kansas plea agreements if Mr. Queen terminated his cooperation in the federal investigation.  Based on these "new" allegations, Mr. Queen alleges that defendants Carney and Ambrose conspired to violate his constitutional rights under the Fifth and Fourteenth Amendments.

The court denies Mr. Queen's motion for leave based on futility.  <u>See</u> <u>Schepp v. Fremont County</u>, 900

F.2d 1148, 1451 (10th Cir. 1990) (stating that a motion to amend may be denied as futile "if the proposed amendment could not have withstood a motion to dismiss or otherwise failed to state a claim.").  The proposed amended complaint contains allegations from February and March 2003 concerning defendant Carney's testimony before Magistrate Judge Hays.  While defendant Carney's testimony before Magistrate Hays actually occurred within the statute of limitations period, his testimony still related to his conduct from May 2002 through May 2003.  Furthermore, defendant Carney would still be entitled to immunity.  Finally, the allegations of a conspiracy between defendants Ambrose and Carney are at best conclusory.

Accordingly, the court denies plaintiffs' motion for leave to file an amended complaint (Doc. 35).

### G.  Motions to Dismiss filed by defendants Target and Lee

Plaintiffs' complaint alleges § 1983 claims against Choo Lee and Unknown members of the Target loss prevention staff arising out of the shoplifting incident on December 26, 2001.  Specifically, plaintiffs' complaint alleges that these defendants violated the Fourth, Fifth, and Fourteenth Amendments when they used unreasonable, excessive force by "gang tackling" Nancy Queen on the asphalt parking lot in front of Target; unlawfully held Christopher Queen inside the Target Store; and called defendant Feden, causing a shoplifting investigation to lead into a federal investigation and subsequent indictments in the Western District of Missouri and the District of Kansas.  Finally, plaintiffs' complaint asserts that Target is liable for the acts of its agents in violating Christopher and Nancy Queen's Fourth, Fifth, and Fourteenth Amendment rights.

Despite the content of these allegations, defendants Target and Lee  request an order from the court quashing plaintiffs' purported service of process on them, or alternatively, dismissing plaintiffs' action against them on the basis of insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5) (Docs. 57, 66).  The court will therefore review the record in this case with regard to service of process.

1.  Service of Process Background

On March 10, 2005, plaintiffs filed a motion for default judgment (Doc. 16) against defendants Target, Lee, and Unknown members of Target's loss prevention staff.  Plaintiffs stated that Target employee Laura Beare signed a certified return receipt on January 5, 2005 for these defendants.  Plaintiffs also contended that they sent a waiver of summons form to defendants Lee and unknown staff at the Target store in Overland Park, Kansas, but that the form was returned because those defendants were not at that address.

On May 27, 2005, plaintiffs filed a motion requesting that the court order defendants Carney, Morrison, Target, and Lee to show cause why they failed to waive service and should not be required to bear the cost of service (Doc. 50).  Judge Waxse denied that motion on June 29, finding that plaintiffs had not moved to recover their costs for follow-up service pursuant to Fed. R. Civ. P. 4(d), nor had they provided any evidence of costs incurred in effecting service on those defendants (Doc. 71).

Defendants Target and Lee filed their first motion to dismiss on June 13, 2005, stating that they purportedly received service on May 23, 2005 (Doc. 57).  On that day, defendants Target and Lee contend that Monique Calhoun, a team member at the Target store located in Overland Park, Kansas, was hand-delivered envelopes containing complaints and summonses for this case.  Defendants Target and Lee argue that this is not sufficient service.  In support, defendants attached the affidavit of Monique Calhoun, who declared that she is "not an officer, manager, a resident, managing or general agent[,] or person designated by law to receive service for Target Corporation."  Ms. Calhoun also stated that she was not a person qualified or appointed to receive service on behalf of Choo Lee, adding that she did not reside in the same dwelling or residence as Lee.

Then on June 16, 2005, plaintiffs filed a motion for leave to amend their complaint (Doc. 62).  Plaintiffs

seek to add Monique Calhoun and Gary Moody, members of Target's loss prevention staff that were previously unknown to them.  Additionally, plaintiffs allege that Monique Calhoun acted as a manager of Target when she received service of the complaint and summons and failed to provide the complaint and summons to the actual manager of the store.  Based on these events, plaintiffs want to add a claim against Ms. Calhoun for interfering and manipulating their service of process in violation of their constitutional rights to due process, as well as Target and any other members of Target's management that interfered with their "constitutional rights in service of process."

On June 24, 2005, defendants Target and Lee filed a second motion to dismiss for insufficient service of process (Doc. 66).  Defendants Target and Lee stated that plaintiffs purportedly served them on June 17, 2005 by sending copies of the complaint and summons to the business office of Todd Johnson, one of their attorneys of record.  Again, defendants Target and Lee maintained that Mr. Johnson was not authorized under either federal or state law to receive service on behalf of them.

Also on June 24, plaintiffs filed two separate documents entitled "Notification with Evidence of Service[] with Amended Complaints of Target Corporation, Choo Lee, and Newly Identified Members of Loss Prevention Staff Gary Moody and Monique Calhoun, Who Also Intentionally Interfered with Service to Target Manager" (Doc. 69),  and "Further Evidence of Prior Service of the Complaint on Target and Choo Lee Occurring on January 4th 2005 (Target) and January 5th 2005 (Choo Lee and Unknown Staff)" (Doc. 70). In the first document, plaintiffs attached four certified mail return receipts, dated June 17, 2005, and a summons return service form for defendants Target and Lee, Mr. Moody, and Ms. Calhoun.  Plaintiffs also reiterated that defendants Target and Lee were previously given waiver of service forms.  The two return receipts for defendants Target and Lee indicate that plaintiffs addressed service to Todd Johnson's business office in

Kansas City, Missouri.  The two return receipts for Mr. Moody and Ms. Calhoun reflect that plaintiffs addressed service to the Target Store located in Overland Park, Kansas, but they do not contain signatures from Mr. Moody or Ms. Calhoun.  Plaintiffs' second filing maintains that defendants Target and Lee were previously sent waiver of service forms, and that they have a duty to show cause why they failed to waive service.  Additionally, plaintiffs attached two separate certified mail return receipts for defendants Target and Lee.  One receipt was dated January 5, 2005, and the other January 4, 2005.  Both return receipts were addressed to the Target Store located in Overland Park, Kansas and signed by Laura Beare.

### 2.  Service of Process Challenge Pursuant to Rule 12(b)(5)

A Rule 12(b)(5) motion . . . challenges the mode or lack of delivery of a summons and complaint." Blue Ocean Lines v. Universal Process Equip., Inc., No. 93 Civ. 1722 (SS), 1993 WL 403961, at *4 (S.D.N.Y Oct. 7, 1993).  "Objections to the sufficiency of process 'must be specific and point out in what manner the plaintiff has failed to satisfy the service provision utilized." O'Brien v. R.J. O'Brien & Assoc., 998 F.2d 1394, 1400 (7th Cir. 1993).  "When [a] defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." Blue Ocean Lines, 1993 WL 403961, at *4.  That a plaintiff proceeds *pro se* does not relieve him or her of compliance with Fed. R. Civ. P. 4. Dicesare v. Stuart, 12 F.3d 973, 980 (10th Cir. 1993).

### a. Service on Domestic Corporations

Service of process in federal court is governed by Rule 4 of the Federal Rules of Civil Procedure.  Rule 4(h)(1) governs service upon domestic corporations, and it allows service to be made "in the manner prescribed for individuals by subdivision (e)(1) or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive

service of process . . . ."  Fed. R. Civ. P. 4(h)(1).  Rule 4(e)(1), in turn, allows service to be made "pursuant to the law of the state in which the district court is located."  Fed. R. Civ. P. (e)(1).  Kansas law provides that domestic corporations may be served process:

> (1) by serving an officer, manager, partner or a resident, managing or general agent, or (2) by leaving a copy of the summons and petition at any business office of the defendant with the person having charge thereof, or (3) by serving any agent authorized by appointment or required by law to receive service of process, and if the agent is one authorized by law to receive service and the law so requires, by also mailing a copy to the defendant.  Service by certified mail on an officer, partner or agent shall be addressed to such person at the person's usual place of business.

K.S.A. § 60-304(e).

It is apparent that plaintiffs did not comply with any of the methods for obtaining service of process on defendant Target as provided above.  Plaintiffs provided a certified mail return receipt, dated January 5, 2005, that was addressed to the Target store in Overland Park, Kansas and signed by Target employee Laura Beare.  Plaintiffs also purportedly hand-delivered a copy of the complaint and summons to Target employee Monique Calhoun on May 23, 2005.  Finally, plaintiffs sent a copy of the complaint and summons to defendant Target's attorney, Todd Johnson, by certified mail on June 17, 2005.  Plaintiffs have not provided sufficient proof that they delivered a copy of the summons and complaint to an officer, a managing or general agent, an agent authorized by appointment or law to receive service of process for Target, or a person having charge of the Target store in Overland Park, Kansas.  Moreover, their allegations that Target or employees of Target have interfered or manipulated with service of process are conclusory.

### b.  Service on Individuals

Fed. R. Civ. P. 4(e) provides that service upon an individual may be obtained "pursuant to the law of the state in which the district court is located" or

> by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. (e)(1), (2).  Kansas law permits service upon an individual

> by serving the individual or by serving an agent authorized by appointment or by law to receive service of process, but if the agent is one designated by statute to receive service, such further notice as the statute requires shall be given.  Service by certified mail shall be addressed to an individual at the individual's dwelling house or usual place of abode and to an authorized agent at the agent's usual or designated address.  If service by certified mail to the individual's dwelling house or usual place of abode is refused or unclaimed, the sheriff, party or party's attorney seeking service may complete service by certified mail, restricted delivery, by serving the individual at a business address after filing a return on service stating the certified mailing to the individual at such individual's dwelling house or usual place of abode has been refused or unclaimed and a business address is known for such individual.

K.S.A. § 60-304(a).

Plaintiffs have failed to meet their burden of establishing proper service of process as to defendant Lee, or any other known or unknown member of Target's loss prevention staff.  All of the return receipts filed with the court concerning defendant Lee were sent to either the Target store located in Overland Park, Kansas or to defendant Lee's attorney, Todd Johnson.  Plaintiffs have not demonstrated by affidavit or otherwise that they attempted service by certified mail to defendant Lee's dwelling house or usual place of abode and that such service was refused or unclaimed.  Only after providing the court with such proof can plaintiffs attempt service by certified mail, restricted delivery, at defendant Lee's business address.

The court recognizes that plaintiffs have apparently sent waiver of service forms to defendants Target and Lee pursuant to Fed. R. Civ. P. 4(d).  However, the mere mailing of the notice and request by a plaintiff does not effectuate service.  The defendant must return the waiver of service to the plaintiff, who must then file

the waiver with the court.  If the defendant fails to return the waiver, then the plaintiff must effectuate service in a manner provided in subdivision (e), (f), or (h) of Rule 4.  See Fed. R. Civ. P. 4(d)(5).  Here, plaintiffs did not receive a waiver from the defendants Target or Lee, and no such waiver was ever filed with the court. Consequently, plaintiffs did not effectuate proper service on defendants Target and Lee merely by mailing them notice that requested waiver of process.

Accordingly, the court finds that plaintiffs have failed to serve defendants Target and Lee.  The court grants their second motion to dismiss (Doc. 66) and denies their first motion to dismiss as moot (Doc. 57). Defendants Target and Lee are dismissed from this action without prejudice.  Based on this ruling, the court also denies plaintiffs' motion for default judgment (Doc. 16) against defendants Target and Lee, and denies plaintiffs' motion for leave to amend their complaint (Doc. 62).

### H.  Remaining Motions

The following motions are denied as moot as a result of the court's rulings in this memorandum and order: plaintiffs' motion to incorporate statements from their original complaint (Doc. 11); defendants Lewis, Burnett, and the City of Overland Park, Kansas's motion to strike (Doc. 13); plaintiffs' motion to reconsider the order of Magistrate Judge Waxse (Doc. 39); defendants Young and Ambrose's motion to strike (Doc. 55); plaintiffs' motion for order (Doc. 56); and plaintiffs' motion for default judgment (Doc. 65).

**IT IS THEREFORE BY THE COURT ORDERED** that defendants Lewis, Burnett, and the City of Overland Park, Kansas's motion to dismiss (Doc. 2) is granted; plaintiffs' motion to incorporate statements from their original complaint (Doc. 11) is denied as moot; defendants Lewis, Burnett, and the City of Overland Park, Kansas's motion to strike (Doc. 13) is denied as moot; plaintiffs' motion for default judgment (Doc. 16) is denied; defendant Nouri's motion to dismiss (Doc. 20) is granted; defendant Feden's motion to dismiss (Doc.

21) is granted; defendants Melgren, O'Hara, and Murguia's motion to dismiss (Doc. 31) is granted; plaintiffs' motion for leave to file an amended complaint (Doc. 35) is denied; defendants Young and Ambrose's motion to dismiss (Doc. 37) is granted; plaintiffs' motion to reconsider the order of Magistrate Judge Waxse (Doc. 39) is denied as moot; defendants Morrison and Carney's motion to dismiss (Doc. 51) is denied as moot; defendants Morrison and Carney's motion to dismiss (Doc. 58) is granted; defendants Young and Ambrose's motion to strike (Doc. 55) is denied as moot; plaintiffs' motion for order (Doc. 56) is denied as moot; defendants Target and Lee's motion to dismiss (Doc. 57) is denied as moot; defendants Target and Lee's motion to dismiss (Doc. 66) is granted; plaintiffs' motion for leave to amend complaint (Doc. 62) is denied; and plaintiffs' motion for default judgment (Doc. 65) is denied as moot.  The court dismisses defendants Lewis, Burnett, the City of Overland Park, Kansas, Feden, Nouri, Melgren, O'Hara, Murguia, Young, Ambrose, Morrison, and Carney with prejudice and dismisses defendants Target and Lee without prejudice.

　　　　**IT IS SO ORDERED** this 12th day of August, 2005.

　　　　The case is closed.


　　　　　　　　　　　　　　　　　　s/ John W. Lungstrum
　　　　　　　　　　　　　　　　　　John W. Lungstrum
　　　　　　　　　　　　　　　　　　United States District Judge